# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2140

DENNIS FORD,

*Plaintiff-Appellant,*

*v.*

MINTEQ SHAPES AND SERVICES, INCORPORATED, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:07-cv-00188-JVB—**Joseph Van Bokkelen**, *Judge.*

ARGUED OCTOBER 6, 2009—DECIDED NOVEMBER 24, 2009

Before BAUER and WOOD, *Circuit Judges.*[*]

BAUER, *Circuit Judge.* Dennis Ford sued his employer, Minteq Shapes and Services, Inc., claiming that Minteq racially harassed him, paid him a discriminatory wage, and retaliated against him, all in violation of Title VII of

---

[*] Judge Ann Claire Williams recused herself after oral argument and has not participated in deciding this appeal. This decision is being issued by a quorum of the panel. *See* 28 U.S.C. § 46(d).

the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* The district court granted summary judgment to Minteq on all counts. We have reviewed the district court's decision de novo; finding no error, we affirm.

## I. BACKGROUND

Dennis Ford has worked for thirteen years at Minteq, a company that manufactures refractories. Ford operates the forklift and strips, casts, and molds refractories at Minteq's facility in Portage, Indiana. Out of twenty employees on site, he has always been the only African-American.

Coworker Joseph Wampler referred to Ford as "black African-American" or "black man" for some period of time until his supervisor Steve Smith and coworker Miguel Altieri overheard Wampler and reprimanded him. Minteq says this period lasted only a couple days in April 2006. But Ford adduced evidence, which we must credit on this appeal, that Wampler's black-man comments had been occurring for fourteen months, *i.e.*, numerous times per day since January 2005. Ford Aff. ¶¶ 6, 7, 12. Ford also adduced evidence that he had reported Wampler's comments in September 2005 to the Manager of Human Resources, Laura Beemsterboer, along with his concerns about a pay raise and the Christmas party. Ford Aff. ¶ 8.

In addition to Wampler's comments, Ford complained of three other circumstances giving rise to his claim for racial harassment. First, Ford's supervisor, Ronald Humphreys, once told Ford that he didn't have to worry

about losing his job because Minteq wanted to appear integrated. Second, another supervisor, Lee Nuzzo, once called him a gorilla. Third, Minteq barred Ford from bringing his grandchildren to the company's Christmas parties although other employees were permitted to bring their families. Upon Ford's eighth year at Minteq, he was allowed to bring his grandchildren but had to pay for their gifts although Minteq purchased gifts for other partygoers.

Ford suffered an eye injury on the job in March 2006. On appeal, he no longer claims that Minteq failed to issue him proper safety equipment. Rather, he claims that his seeking medical attention outside Minteq's company clinic resulted in Minteq retaliating against him by denying him phone privileges. Because of his denial of phone privileges, he missed a call one day and had to wait until that evening to discover that an ill family member had died.

On May 5, 2007, Ford initiated this case against Minteq after obtaining a right-to-sue letter from the Equal Employment Opportunity Commission. Minteq and Ford engaged in discovery and Minteq moved for summary judgment. The district court entered summary judgment in favor of Minteq on March 31, 2009, and Ford timely filed this appeal.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo, construing all facts and reasonable infer-

ences in Ford's favor. *Winsley v. Cook County*, 563 F.3d 598, 602 (7th Cir. 2009). Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that Minteq is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c).

### A.  Racial Harassment

To survive Minteq's motion for summary judgment on his racial harassment claim, Ford needed to present evidence that, if believed by a trier of fact, would show that Minteq's conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Whether Minteq's work environment was hostile or abusive depends on factors that "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

We have examined these factors as applied to Ford and find that Wampler's black-man comments, Humphreys' affirmative-action comment, Nuzzo's gorilla comment, and Ford's Christmas-party treatment, considered separately or in the aggregate, do not support a legal claim for harassment.

Wampler's referring to Ford as "black man" and "black African-American," even for fourteen months as we must assume favorably to Ford, was not severe enough

to alter Ford's working conditions and thereby constitute racial harassment, because he failed to adequately pursue his racial harassment complaint against Wampler. Ford admits he reported Wampler's behavior to Beemsterboer only once in fourteen months, and Ford presented no evidence that his chief concern in this conversation was Wampler's black-man comments rather than Minteq's Christmas-party treatment of him or his sought-after pay raise. Ford Dep. at 115. Nor did Ford follow up with Beemsterboer, his supervisor Smith, or anyone else when no apparent action was taken in the next seven months. Ford thus presented no evidence that he took reasonable steps to inform Minteq of Wampler's comments. This inaction by Ford belies the notion that Wampler's black-man comments created a hostile work environment. Hence, no reasonable jury could find that Wampler's comments rose to the level of harassment.

Nor did Humphreys' affirmative-action comment or Nuzzo's gorilla comment constitute harassment; they each happened only once, did not impair Ford's job performance, and were insufficiently severe to rise to the level of a hostile work environment. Although we find these comments rude and offensive, Title VII is "not . . . a general civility code" and will not find liability based on the "sporadic use of abusive language." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Nor did the Christmas-party treatment constitute racial harassment; it did not impair Ford's job performance, it happened too occasionally and outside the

normal workday to rise to the level of a hostile work environment, and there is no evidence that it was because of his race.

We thus find no genuine issues of fact with respect to the existence of racial harassment. So we need not address whether Minteq can establish an affirmative defense under *Faragher,* 524 U.S. 775, and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

## B.  Disparate Pay

To prevail on his claim for disparate pay, Ford was required to present evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated differently from similarly situated employees who were not members of the protected class. *Hildbrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1029 (7th Cir. 2003).

Ford fails to satisfy the fourth element regarding disparate treatment because he adduced no evidence that higher paid workers were similarly situated. Ford was free during pretrial discovery to gather employees' pay stubs from Minteq, and to depose them or Minteq about their job responsibilities, but he failed to do so. Ford does present pay stub evidence that he received less pay than David Lewin, another employee with an identical job title. But equal title does not mean equal responsibilities. The record's only evidence of Minteq paying more to white employees with equal responsibilities is

Ford's own conclusory, uncorroborated testimony. This is not enough to survive summary judgment.

### C. Retaliation

To survive summary judgment on his retaliation claim, Ford was required to present evidence that he suffered an adverse employment action because he engaged in an activity protected by Title VII. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 662-63 (7th Cir. 2006). Ford fails under this standard because the activity that he alleges resulted in retaliation—seeking medical treatment outside the company's clinic—is not statutorily protected by Title VII, *i.e.*, it does not consist of "oppos[ing] any practice made an unlawful employment practice by this subchapter" or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Ford argues only that his activity was protected by two Indiana statutes, not Title VII of the Civil Rights Act. Pl. Br. 23.

### III. CONCLUSION

For the reasons discussed above, we AFFIRM the district court's grant of summary judgment on Ford's employment discrimination claims.