In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-2957

CHRISTINE BOARDMAN,

*Plaintiff-Appellant,*

*v.*

SERVICE EMPLOYEES INTERNATIONAL UNION, *et al.,*

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-2728 — **Rebecca R. Pallmeyer**, *Chief Judge.*

———————————

ARGUED SEPTEMBER 19, 2023 — DECIDED DECEMBER 26, 2023

———————————

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges.*

WOOD, *Circuit Judge*. Service Employees International Union ("International") is a North American labor union that represents people in health care, public services, and various other fields. It functions through a network of local affiliates. The present case arose when, alarmed by internecine hostilities within Local 73 (covering Illinois and northwest Indiana), the International intervened by imposing an emergency trusteeship on the Local. Among other things, the Trustee

removed the Local's President, Christine Boardman, from office.

Boardman fought back with a lawsuit under the Labor Management Reporting and Disclosure Act ("the Act"), 29 U.S.C. § 411, *et seq*. She alleges that the International's asserted justification for the trusteeship was pretextual, and that International President Mary Kay Henry imposed the trusteeship to retaliate against Boardman for speech that is protected under the Act. After some motion practice and discovery, the defendants moved for summary judgment on all claims. The district court ruled in their favor, and we affirm.

# I

From November 2000 until the International imposed the trusteeship on August 3, 2016, Boardman served as President of the Local. At some point, relations between Boardman and Henry became strained. When Henry first ran for International President in 2010, Boardman told several people that she supported Henry's opponent. In 2012, Boardman advised Henry that the International was "making a big mistake" by granting another union the exclusive right to organize nurses in the Midwest. In 2014, the International ordered the Local and another local union affiliate to suspend their competing efforts to organize a group of health clinic workers. Boardman sent Henry an email pointedly criticizing this decision. Finally, in 2015, the International endorsed Hillary Clinton in the Democratic primary election—an endorsement Henry supported. Boardman favored Bernie Sanders and communicated this to the International Executive Vice President. According to Boardman, these events created a "pattern of dissent" for which Henry sought to punish Boardman.

As the International tells the story, the trusteeship was necessary to address longstanding political infighting between the Local's two highest-ranking officials: Boardman and Secretary-Treasurer Matthew Brandon. The International was well aware of that feud, as the two leaders had brought their grievances to Henry and the International's attention on numerous occasions. During a Local Executive Board meeting in August 2015, Brandon opposed Boardman's recommendation to fill a vacant vice-president position. Two days later, Brandon emailed Henry and several International officials, describing the environment at the Local as "hostile" and stating that he "[would] continue to oppose" Boardman's decisions. Brandon emailed Henry again later that week, this time to denounce the Local's "crisis of leadership" and inform Henry that Boardman had fired Wayne Lindwall, a Division Director, who Brandon believed was fired in "retaliation" for not being "loyal to [Boardman]."

The International tried to smooth the waters. On August 18, 2015, Henry appointed two personal representatives to "assist [the Local]'s leaders with carrying out [its] priorities[.]" That step alone did not do the job: soon after, a Local Executive Board Meeting was disrupted by several armed people shouting and demanding that Boardman reinstate Lindwall. Boardman believed they were "aviation police" or "from one of [the] other bargaining units." She later rehired Lindwall, and conflict at the Local subsided over the following months. In January 2016, Boardman announced to the Local's Executive Board and general membership her intent to retire as President. On March 30, 2016, Boardman followed up with a public statement that she planned to retire in June and to name Brandon as her interim successor. By May 2016, Henry's personal representatives had left the Local.

Tensions soon reignited. First, Boardman fired Lindwall for a second time. In June 2016, Boardman rescinded her plan to retire. Brandon asserted that the recission came too late and that he was now the rightful President of the Local. On July 1, 2016, Boardman filed internal disciplinary charges against Brandon and suspended him for 30 days. Boardman appealed to Henry and the International to "assume original jurisdiction" over her charges.

Chaos erupted during a Local Executive Board meeting on July 15, 2016. Anticipating that Brandon would contest her authority to lead the meeting, Boardman hired off-duty police officers to attend. Armed supporters of Brandon appeared, shouting that Boardman should "let Brandon take over." Boardman filed internal charges against Brandon in which she described the meeting as a "coup d'état." She added that concern that "violence might erupt" led the Local to postpone a general membership meeting scheduled for the following day.

On August 1, 2016, Deedee Fitzpatrick, the Deputy Chief of Staff at the International, sent Henry a memorandum detailing the "serious breakdown in the internal democratic governance structure" at the Local and concluding that no "measure short of an emergency trusteeship … would restore the stability" needed. Unlike a regular trusteeship, an emergency trusteeship may be imposed prior to a hearing. Article VIII, Section 7(f) of the International's constitution permits an emergency trusteeship if "in the judgment of the International President, an emergency situation exists within the Local Union."

Henry issued an Emergency Trusteeship Order on August 3, 2016. The order cites Boardman and Brandon's "[i]ncessant

in-fighting" that escalated to the point of "impeding the Local's ability to carry out its basic governance functions." It states that a trusteeship was necessary to "restore the orderly and democratic function of the Local, safeguard the interests of the Local membership and the Local's financial resources, and assure that the Local is meeting its representation and collective bargaining responsibilities." Boardman was removed from her position as President by operation of the trusteeship. In accordance with its constitution and bylaws, the International eventually held a hearing and determined that the emergency trusteeship was warranted.

Boardman challenged her demotion in a suit under the Act against the International, the Local, Henry, and two of the trustees named in Henry's order—Eliseo Medina and Dian Palmer. Counts Three and Six allege that the trusteeship was improper under Title III of the Act, which governs when and how labor organizations can impose trusteeships. In addition, she asserted theories under Title I of the Act, which creates a "Bill of Rights" for union members. Counts Two and Five allege that the defendants imposed the trusteeship in retaliation against Boardman for her protected speech. The remaining counts challenge the consequences of the trusteeship, including Boardman's removal from her position and termination of her union membership.

The district court concluded that the trusteeship was validly imposed under Title III. Because Boardman's Title I claims rest on her allegations that the trusteeship was invalid, the court held that summary judgment on her remaining claims was also proper. Boardman now appeals.

## II

We review a district court's grant of summary judgment *de novo*. *Stevens v. United States Dep't of State*, 20 F.4th 337, 342 (7th Cir. 2021). Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We construe the facts in the light most favorable to the nonmoving party (Boardman) and draw all reasonable inferences in her favor. *Miller v. Chicago Transit Authority*, 20 F.4th 1148, 1155 (7th Cir. 2021).

Boardman's Title III claims hinge on whether the trusteeship was validly imposed. The district court held that if at least one proper purpose for imposing it exists, a claim that the trusteeship was retaliatory fails. On appeal, Boardman argues that the district court erred as a matter of law in applying this "sole proper purpose" standard. She proposes that we adopt an alternative standard, akin to a mixed-motives test, under which a finding that the International had "one bad motive" is "sufficient to defeat the trusteeship in its entirety, regardless of other asserted bases for its imposition."

As an initial matter, Boardman at least forfeited, if not waived, her ability to challenge the legal standard applied by the district court. It is well settled that arguments not raised in the district court are waived on appeal. *Kunz v. DeFelice*, 538 F.3d 667, 681 (7th Cir. 2008). Boardman never contested the application of a "sole proper purpose" standard at the summary judgment stage. Nor did she propose an alternative legal standard. Instead, Boardman's briefs and arguments accepted the sole proper purpose standard and asserted that she satisfied it, because the sole reason for imposing the trusteeship was impermissible retaliation.

Even assuming Boardman merely forfeited this argument, she cannot prevail. We already have rejected her proposed "one bad motive" standard. In *Serafinn v. Local 722, Int'l Brotherhood of Teamsters*, 597 F.3d 908, 914 (7th Cir. 2010), we stated that "[a] mixed-motive theory of liability is *never* proper in a suit brought under the [Act]." And in *Int'l Brotherhood of Boilermakers v. Local Lodge 714*, 845 F.2d 687, 693 (7th Cir. 1988), we concluded that a trusteeship was validly imposed because "financial malpractice was the (*or a*) bona fide purpose of the trusteeship[.]" (emphasis added). Indeed, Boardman has not referred us to any decision that adopts her proposed standard. Thus, the district court did not err in applying a sole proper purpose standard.

Applying this standard here, the dispositive question is whether the International's decision to impose the trusteeship was supported by a (*i.e.*, at least one) valid statutory purpose. The Act provides that a trusteeship may be established only for the purposes of "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization." 29 U.S.C. § 462. Henry's order stated that a trusteeship was necessary, among other reasons, for the enumerated purpose of "restor[ing] democratic procedures at the Local." The order cited the "[i]ncessant in-fighting" between Boardman and Brandon— behavior that "imped[ed] the Local's ability to carry out its basic governance functions such as conducting Executive Board and general membership meetings." Henry's order also mentioned concerns about the Local's finances. We set that part to one side, because the stated purpose of

"restor[ing] democratic procedures" suffices on its own to up-
hold the trusteeship.

The undisputed evidence in the record supports this as-
serted basis for the trusteeship. As early as August 2015, Bran-
don emailed Henry denouncing the "crisis of leadership" at
the Local. To the extent that Henry's appointed personal rep-
resentatives mitigated these problems, their success was tem-
porary. Political infighting between the Local's top two lead-
ers reached its peak in the month preceding the trusteeship.
Boardman filed two sets of disciplinary charges against Bran-
don, suspended him, and rescinded her previously an-
nounced intent to retire. Brandon struck back with challenges
to Boardman's authority to lead the Local. Tension was so
high that Boardman hired off-duty police officers to attend a
Local Executive Board meeting on July 15. That meeting was
disrupted by armed supporters of Brandon, demanding that
Boardman retire and "let Brandon take over." Though she
now disputes that the meeting was "chaotic," Boardman her-
self described it as a "coup d'état" in the second set of charges
she filed against Brandon. Based on this undisputed chain of
events, any reasonable juror would conclude that Henry had
a legitimate basis for governance concerns.

Boardman asks us to second-guess the International's de-
cision about how best to govern its internal affairs. But that is
not our role. See *Local Lodge 714*, 845 F.2d at 693 (concluding
the trusteeship was valid "even if less drastic methods would
have sufficed"). We are especially hesitant to invade the au-
tonomy of labor organizations. The International considered
options short of an emergency trusteeship and concluded that
nothing else would restore stability at the Local. Fitzpatrick's
memorandum cautioned Henry that waiting for the

resolution of disciplinary proceedings would "take too long" and risked "distract[ing] Boardman and Brandon from the operation of the Local." Henry's earlier attempts to appoint personal representatives had proved inadequate. Moreover, Boardman herself asked the International to intervene when she requested that Henry adjudicate her disciplinary charges against Brandon. We may not second-guess the International's chosen method of intervention simply because Boardman dislikes it.

Boardman nonetheless contends that summary judgment was not appropriate because "a reasonable jury could find animus between Henry" and Boardman. But whether Henry and Boardman had bad blood between them is not dispositive. Even if we assume, as the district court did, that Henry's animus also lay behind her decision to impose the trusteeship, no reasonable juror could find that her decision was pretextual. Since one valid purpose suffices to uphold a trusteeship, we need not consider Boardman's allegations of additional improper motives.

Regardless, the evidence supporting her retaliation theory is sparse. Boardman presents no evidence suggesting that her instances of speaking out against Henry between 2010 and 2015 are causally related to Henry's decision to impose the trusteeship in 2016. Inferences supported only by speculation or conjecture are not sufficient to survive summary judgment. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). That the governance issues at the Local occurred over a nine-month period also undercuts any inference of retaliation. See *Kelly v. Municipal Courts of Marion County*, 97 F.3d 902, 912 (7th Cir. 1996) (four-month gap between protected speech and termination undercut inference of retaliation).

Boardman additionally argues that the International's "re-peated departures" from its constitution and bylaws evince bad motive. She argues that bad motive lay behind the International's decisions to impose an emergency trusteeship, to grant two extensions of time for good cause during the hearing process, and to deny Boardman "party status" at the hearing (which would have allowed her to call and cross-examine witnesses). Yet each of these decisions is specifically permitted by the International's constitution and bylaws. Further, Boardman has failed to show that she was "treated differently from similarly situated union members who did not exercise their right to free speech." *Serafinn*, 597 F.3d at 918. Henry's decision to impose an emergency trusteeship in response to Boardman's actions did not stand alone. The record shows that Henry imposed at least four emergency trusteeships on other locals during her presidency, including one before August 2016. Boardman presents no evidence suggesting that the International employed different procedures from those it used here, in connection with these four other emergency trusteeships.

**III**

In sum, ample evidence in the record demonstrates that the International imposed this trusteeship to restore governance stability at the Local. This one proper purpose suffices to uphold the trusteeship, without regard to any improper motives that Henry may have had. The district court thus appropriately granted summary judgment in favor of the defendants on Boardman's Title III claims. And because Boardman's Title I claims rest on the assertion that the trusteeship was invalid, her remaining claims fail as well.

We AFFIRM the judgment of the district court.