In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-2732

ANNA DARCHAK,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO BOARD OF EDUCATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-C-104—**Robert W. Gettleman**, *Judge*.

ARGUED MAY 27, 2009—DECIDED SEPTEMBER 3, 2009

Before CUDAHY, RIPPLE and WOOD, *Circuit Judges*.

CUDAHY, *Circuit Judge*. Anna Darchak is a Polish bilingual teacher whose one-year contract with the Chicago Public Schools was not renewed after a tumultuous school year. Darchak claims that she lost her job because she complained that the school principal was violating the No Child Left Behind Act. She says the principal's hostility also stemmed from her animosity toward people of Polish descent. Darchak filed this

lawsuit against the City of Chicago Board of Education (Board), alleging, *inter alia*, retaliatory discharge, first amendment retaliation and national origin discrimination. The Board offers several explanations for not renewing Darchak's contract: insubordination, ineffective classroom management and refusal to follow a teaching schedule. Yet Darchak also offers evidence of discrimination.

The district court granted the Board's motion for summary judgment. We affirm the dismissal of Darchak's retaliatory discharge and first amendment retaliation claims. However, because she has put forth sufficient evidence of discrimination to reach a jury, we reverse on her national origin discrimination claim.

I

Anna Darchak moved to the United States from Poland in 1991. Three years later, she began working for the Chicago Public School system (CPS) at Taft High School, where she taught in the Bilingual and English as a Second Language (ESL) program. She resigned from her post at Taft in 2002 and took a job with the CPS Office of Language and Cultural Education (OLCE).

At the beginning of the 2004 school year, Darchak began providing ESL support to English Language Learners—students at CPS schools whose native language was not English. One of these schools was the Princeton Alternative Center, an elementary school in Chicago. By February 2005, Darchak was working at Princeton five

days a week as an ESL and Polish-bilingual teacher. At that time, most of the students enrolled at Princeton were Hispanic (77%); there were also African-American (17%) and Polish (6%) students.

Princeton Principal Rosalva Acevedo hired Darchak as a full-time teacher for the 2005–2006 school year in anticipation of an increase in Polish-speaking students. Darchak's status in this new job was that of a Probationary Appointed Teacher, and she had a one-year contract, renewable at the end of the school year. Her position was funded by OLCE and was dependent on the number of English Language Learners at Princeton.

Darchak claims that within the first month of her full-time employment at Princeton, she noticed that the Hispanic students were receiving better treatment than the Polish students: Hispanic students were given better resources and native language services. When Darchak approached Acevedo with her concerns, Acevedo allegedly responded, "[Hispanic students] are better than Polish and deserve more than Polish people. . . . [I]f you don't want to do whatever I tell you to do, you can leave my school." At the time, Darchak did not tell anyone about Acevedo's remarks. Then, in early November, Acevedo gave Darchak a "cautionary notice" charging her with "insubordination" for refusing to follow the ESL teaching schedule. When Darchak confronted Acevedo about the notice, Acevedo allegedly replied, "I brought you to this school and you stupid Polack pushed the teachers against me."

Darchak immediately began complaining to Acevedo's supervisors in meetings and letters about what she per-

ceived as Acevedo's mismanagement of the school. In none of this communication, however, did she mention Acevedo's disparaging remarks about Darchak's national origin. Though not at issue on appeal, Darchak also claims that, as a result of Acevedo's discrimination, she sought treatment for depression and anxiety beginning in November 2005.

In March 2006, a teaching position opened in Room 206, a classroom with a number of English Language Learners, most of whom were native Spanish speakers. Acevedo checked with the CPS Accountability Department to determine whether Darchak was qualified to temporarily teach the students in Room 206. After confirming Darchak's qualifications, Acevedo assigned her to the classroom on a temporary basis.

Darchak felt that her assignment to Room 206 violated the federal No Child Left Behind Act because she was not qualified to teach in a bilingual Spanish classroom. She repeatedly expressed this concern to Acevedo and to Acevedo's supervisors. On March 10, Darchak received a second cautionary notice, which said that she had been discourteous and negligent in supervising her students. This notice was followed by a negative performance evaluation, which stated that Darchak had difficulty following rules, interacting with students, and getting along with other school community members.

Acevedo had received word in February that funding for Darchak's position would not be available from OLCE for the following school year because of declining enrollment. In mid-March, the Board asked Acevedo

which Probationary Appointed Teacher contracts she wanted to renew for the next school year. Despite the cut in funding, Acevedo chose to renew the contracts of several probationary teachers, including that of another Polish teacher. Acevedo could have renewed Darchak's contract with funding from Princeton's discretionary budget.[1] Acevedo did not recommend renewing Darchak's one-year contract, and the Board accepted Acevedo's recommendation. In April Darchak took a leave of absence that she attributed to stress. She never returned to Princeton. Darchak was officially terminated on August 31, 2006.

Darchak filed this lawsuit in January 2007, naming the Board as the sole defendant. Darchak's complaint alleged retaliatory discharge, a common law tort under Illinois law; retaliation for exercising her first amendment rights in violation of 42 U.S.C. § 1983; national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17; and disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. The district court granted summary judgment for the Board. Darchak appeals her retaliatory discharge, first amendment retaliation and national origin discrimination claims; she

---

[1] Darchak was one of 1,062 Probationary Appointed Teachers whose contracts were not renewed for the 2006–2007 school year; the record does not indicate how many contracts *were* renewed. Princeton's discretionary budget for the 2005–2006 school year was approximately $350,000. Darchak's yearly salary was about $80,000.

does not challenge the dismissal of her ADA claim, and therefore we do not disturb that ruling.

II

A

To begin, Darchak claims that the Board refused to renew her teaching contract in retaliation for her complaints that her teaching assignment in Room 206 violated the federal No Child Left Behind Act. This claim is styled as an Illinois retaliatory discharge claim, cognizable here under our supplemental jurisdiction. 28 U.S.C. § 1367(a).

To establish a retaliatory discharge, Darchak must demonstrate that she was "(1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy." *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009) (citations omitted). Darchak's claim fails the first and third of these requirements.

First, Illinois courts evaluating retaliatory discharge claims have refused "to recognize a claim in any injury short of actual discharge." *Bajalo v. Northwestern Univ.*, 860 N.E.2d 556, 561 (Ill. App. Ct. 2006). "Actual discharge" means termination of an "at-will" employee—one whose employment has a nonspecific duration that can be terminated for any reason—*not* nonrenewal of a fixed-term employment contract. *Krum v. Chi. Nat'l League Ball Club, Inc.*, 851 N.E.2d 621, 624 (Ill. App. Ct. 2006). Indeed, Illinois appellate courts have expressly refused to extend the reach of the retaliatory discharge tort to

cover the nonrenewal of a fixed-term contract. *Id.* at 625; *see also Bajalo*, 860 N.E.2d at 559–63.[2] Darchak had a fixed, one-year contract with the school district. It is therefore highly unlikely that the Illinois Supreme court would permit her to bring a retaliatory discharge claim.

Yet Darchak's retaliatory discharge claim fails in any event because the nonrenewal of her contract did not violate "a clear mandate of public policy." Although what counts as a clearly mandated public policy is not precisely defined, *see, e.g., Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878–79 (Ill. 1981); *Carty v. Suter Co., Inc.*, 863 N.E.2d 771, 774 (Ill. App. Ct. 2007), the tort has been narrowly construed in Illinois to include only discharges in retaliation for certain activities, such as reporting an employer's criminal violations, *Palmateer*, 421 N.E.2d at 880, or violations of health and safety standards, *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (Ill. 1985). *See also Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 357–58 (Ill.

---

[2] The Illinois Supreme Court has not addressed this question, and we therefore look to decisions by the state's intermediate appellate courts for guidance. *See Goetzke v. Ferro Corp.,* 280 F.3d 766, 773 (7th Cir. 2002). The Illinois Supreme Court *has* addressed putative retaliatory discharge claims brought for other forms of termination or demotion, and rejected them. *See Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 882 (Ill. 1994) (finding that retaliatory demotion was not a chargeable tort); *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 730 (Ill. 1992) (holding that constructive discharge could not support a retaliatory discharge claim).

1978). The Illinois Supreme Court has defined "public policy" only within these limited bounds and thus "has consistently sought to restrict the common law tort of retaliatory discharge." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1121 (Ill. 1999) (citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 569 (Ill. 1998)).

The "public policy" that Darchak cites is found in the general purpose declaration of the No Child Left Behind Act: "that all children have a fair, equal, and significant opportunity to obtain a high-quality education." 20 U.S.C. § 6301. Darchak maintains that the Polish students at Princeton did not have the same access to a "high-quality" education as the Hispanic students did. Educational quality is doubtless an important social objective, but Illinois courts have never recognized a claim for retaliatory discharge based on a reported violation of that policy or any like it, nor do we have reason to believe that they would do so in an appropriate case. We therefore affirm the dismissal of Darchak's retaliatory discharge claim.

## B

Second, Darchak raises a first amendment retaliation claim under 42 U.S.C. § 1983. She argues that the Board failed to rehire her in retaliation for her complaints that Acevedo was violating the No Child Left Behind Act. Even assuming that Darchak's complaints are constitutionally protected speech, *see Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, at *4 (7th Cir. 2009), which in itself is not at all clear, this claim fails for a more

basic reason. Acevedo has not been named as a defendant. The doctrine of respondeat superior is unavailable under § 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978), so in order for Darchak's retaliation claim to succeed, she must present evidence that the Board itself violated her civil rights. Municipal agencies can be found liable under § 1983 for violating a plaintiff's civil rights through "(1) an express municipal policy; (2) a widespread practice constituting custom or usage; or (3) a constitutional injury caused or ratified by a person with final policymaking authority." *Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002) (citing *Kujawski v. Bd. of Comm'rs*, 183 F.3d 734, 737 (7th Cir. 1999)); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (opinion of O'Connor, J.). Darchak relies exclusively on an assertion that Acevedo was a final policymaker.

We agree with the district court that Darchak has failed to present evidence of Acevedo's final authority over the nonrenewal of Darchak's contract. State law determines who legally constitutes a final policymaker, *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997) (citations omitted), and Illinois law clearly assigns responsibility for personnel decisions to the Board, not to individual school principals: "The right to employ, discharge, and layoff shall be vested solely with the board . . . ." 105 ILCS 5/34-8.1; *see also Duda v. Bd. of Educ.*, 133 F.3d 1054, 1061 (7th Cir. 1998) ("Nothing in the School Code allows us to infer that a . . . principal has been delegated policymaking authority with respect to personnel decisions.") (citation omitted).

Darchak argues that, despite the absence of express authority, Acevedo is a *de facto* final policymaker because the Board accepted Acevedo's recommendation not to renew Darchak's contract without performing an independent review. However, "liability requires more than the fact that a low level supervisor took some action that was not later reversed by a policymaker." *Simmons*, 289 F.3d at 494. The Board's following Acevedo's recommendation is not enough to prove that Acevedo was a final policymaker. To maintain her § 1983 claim, Darchak must demonstrate that the Board either delegated final policymaking authority to Acevedo or ratified Acevedo's action.

Under the delegation theory, the person or entity with final policymaking authority must delegate the power to make policy, not simply the power to make decisions. "There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Kujawski*, 183 F.3d at 739 (citations omitted). Darchak presents no evidence that the Board had entrusted Acevedo with the power to create employment policy. Again, policymaking is broader than decisionmaking; the Board's failure to review one personnel recommendation does not mean that the Board systematically allows Acevedo to set policy on employment decisions or to make final decisions without Board review. *See Rasche v. Vill. of Beecher*, 336 F.3d 588, 600 (7th Cir. 2003) (determining under Illinois law that if a municipal agency retained authority to review officials' decisions, the officials did not have final policymaking authority);

*Gernetzke v. Kenosha Unified Sch. Dist. No. 1,* 274 F.3d 464, 469 (7th Cir. 2001) ("Delegation is not direction; authorization is not command; permission does not constitute the permittee the final policymaking authority.") (citations omitted); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 602–03 (5th Cir. 2001) (holding that an official is a "final policymaker" only when her decisions are "unreviewable by any other body").

Nor did the Board's decision to adopt Acevedo's recommendation without review constitute a ratification of Acevedo's action. "[A] § 1983 claim . . . based on a 'ratification' theory must allege that a municipal official with final policymaking authority approved the subordinate's decision *and the basis for it*." *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) (emphasis added). The Board approved Acevedo's decision not to renew Darchak's contract, but no evidence demonstrates that the Board was aware of any potential retaliatory basis for the nonrenewal.

C

Finally, Darchak argues that the Board discriminated against her on the basis of her national origin in violation of Title VII. Unlike § 1983, Title VII allows plaintiffs to use the doctrine of respondeat superior to hold a municipal agency vicariously liable for the actions of its employees. *Mateu-Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 623–24 (7th Cir. 2002). Darchak claims that Acevedo's derogatory remarks about Polish people demonstrated a discriminatory animus that motivated

her recommendation not to renew Darchak's employment contract. The Board admits that it accepted Acevedo's recommendation.

Under Title VII, a plaintiff can prove discrimination either by presenting evidence of discrimination (the "direct method" of proof), or by the *McDonnell Douglas* burden-shifting approach (the "indirect method"). *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009); *Antonetti v. Abbott Labs.*, 563 F.3d 587, 591 (7th Cir. 2009). Darchak's claim fails under the burden-shifting method, because she has not shown that the Board's purported reasons for letting her go—funding cuts and poor performance—were pretextual. Her case under the direct method of proof, however, is not so easy.

Under the direct method of proof, a plaintiff's claim survives summary judgment if she can demonstrate "triable issues as to whether discrimination motivated the adverse employment action." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009) (citation omitted). She can establish triable issues using either direct or circumstantial evidence. *Id.*; *see Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) ("The focus of the direct method of proof thus is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action.") (citation omitted). Direct evidence would be an admission by the decisionmaker that the adverse employment action was motivated by discriminatory animus. *Nagle*, 554 F.3d at 1114. Such admissions are understandably rare, and lacking here.

Circumstantial evidence of discrimination, however, is less rare. We typically point to three categories of circumstantial evidence in employment discrimination cases:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Sun v. Bd. of Trustees*, 473 F.3d 799, 812 (7th Cir. 2007) (citation omitted); *Troupe v. May Dep't Stores, Inc.*, 20 F.3d 734, 736 (7th Cir. 1994).

Darchak presented evidence that Acevedo made derogatory remarks to her about Polish people in October and November 2005. Acevedo allegedly said that Hispanic students are "better than Polish" and "deserve more than Polish people." She called Darchak a "stupid Polack," and told her, "if you don't want to do whatever I tell you to do, you can leave my school." These remarks were followed shortly by a cautionary notice from Acevedo charging Darchak with insubordination and, ultimately, by the nonrenewal of Darchak's contract several months later. This evidence fits the first category of circumstantial evidence listed above. In fact, the derogatory comments allegedly made by Acevedo are less ambiguous than those in many discrimination cases. The

"stupid Polack" remark speaks clearly of discriminatory animus, and the other remarks are suggestive.

The district court dismissed this claim for two reasons. First, the court stated that Darchak "provide[d] no support for her allegations besides her own self-serving deposition transcript." *Darchak v. Bd. of Educ.*, No. 07-C-104, 2008 WL 4866055, at *6 (N.D. Ill. June 25, 2008). It is true that uncorroborated, self-serving testimony cannot support a claim if the testimony is based on "speculation, intuition, or rumor" or is "inherently implausible." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). But testimony based on first-hand experience is none of those things. Darchak's testimony presents specific facts, even if that testimony may be less plausible than the opposing litigant's conflicting testimony (a question we need not—nay, cannot—reach). *Id.* And while it is also true that isolated remarks are not enough to meet the plaintiff's burden, remarks coupled with an adverse employment action suffice. *See Venters v. City of Delphi*, 123 F.3d 956, 973 & n.7 (7th Cir. 1997) (citing, *inter alia*, *Shager v. Upjohn Co.*, 913 F.2d 398, 402 (7th Cir. 1990)). A reasonable jury could find Darchak's report of Acevedo's remarks convincing, and it is undisputed that Darchak's contract was not renewed at Acevedo's recommendation and that contract nonrenewal is an adverse employment action. Nothing more is needed to demonstrate that a plaintiff has established a prima facie case under the direct method of proof. *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 905 (7th Cir. 2006). There need not be a rich and varied body of circumstantial evidence (a "mosaic" of discrimination, *Troupe*, 20 F.3d at 737), as long as what

evidence there is adds up to discriminatory intent. *See Sylvester*, 453 F.3d at 903–04.

This brings us to the district court's second reason for dismissing Darchak's discrimination claim: the court determined that Darchak failed to demonstrate that "Acevedo's comments were causally related to her decision not to renew [Darchak's contract]." *Darchak*, 2008 WL 4866055, at *6.[3] This appears to be a question of timing. But the bare fact that Darchak was not fired immediately after Acevedo allegedly made these remarks does not destroy the potential causal connection. The structure of the school year dictated the employment timetable, and Acevedo may not have been able to recommend nonrenewal of Darchak's contract any earlier than she did. In any event, we have previously found that three to four months between a remark and an employment action is not so long as to defeat the inference of a causal nexus, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7th Cir. 2000), and not much more time than that, if any, elapsed here.

The connection between Acevedo's discriminatory remarks and her ultimate recommendation not to renew

---

[3] The Board argues that Darchak has waived her challenge to the dismissal of this claim by failing to address the district court's finding on causality. Darchak has fairly presented her argument regarding the Title VII claim, and the Board has suffered no prejudice from any deficiency in the particularity with which she presented it. We therefore conclude that Darchak has not waived her appeal of this claim.

Darchak's contract raises a question of intent. The fact that Acevedo rehired another Polish teacher is evidence of a possible answer to that question, but, as a question of intent, it is properly put to the jury, not to the court on summary judgment. *Payne*, 337 F.3d at 770. It is possible the district court simply did not believe Darchak; indeed, as we have noted, she presented no evidence of Acevedo's comments besides her own testimony, and the only other person present during these conversations— Acevedo—denies having made them.[4] But we repeat that it is not the court's job to assess the persuasiveness of Darchak's testimony. *Giannopoulos v. Brach & Brock Confec-*

---

[4] Also suggestive is that Darchak failed to complain about discrimination until she filed this lawsuit. This can defeat a claim where an employer has in place anti-discrimination policies and the employee fails to take advantage of them, *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 806–07 (1998), but the Board may not maintain a *Faragher/Ellerth* defense here because in addition to Acevedo's discriminatory remarks, Darchak has also shown that she suffered a tangible employment action. *See Jackson v. County of Racine*, 474 F.3d 493, 500–01 (7th Cir. 2007) (*Ellerth* and *Faragher* established that in situations where "the supervisor's harassment resulted in 'a tangible employment action, such as discharge, demotion, or undesirable reassignment,' . . . the employer's vicarious liability is strict, in the sense that no defense is available once the other elements of the case have been proven.") (internal citation omitted). The district court dismissed a putative hostile work environment claim on *Faragher/Ellerth* grounds, but Darchak has not challenged that ruling.

*tions, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997) (warning courts against "invad[ing] the province of the factfinder by attempting to resolve swearing contests and the like" and collecting cases). Employment discrimination cases often center on parties' intent and credibility, which must go to a jury unless "no rational factfinder could draw the contrary inference," *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 894 (7th Cir. 1996). That is not the case here.

Finally, even if the Board is able to prove valid reasons for not renewing Darchak's contract—OLCE's funding cuts as well as Darchak's performance issues suggest the Board *is* able to provide reasons—such proof does not by itself extinguish Darchak's claim. This is because Darchak presented evidence of discrimination, which a jury could find also played a role in the employment decision. In mixed-motive cases, the defendant "escapes having to pay damages but, by virtue of the 1991 amendment [to the Civil Rights Act], still has to pay the plaintiff's attorney's fees and is also subject to declaratory and injunctive relief" if the employment decision had some discriminatory motivation. *Boyd v. Ill. State Police,* 384 F.3d 888, 900 (7th Cir. 2004) (Posner, J., concurring); *see* 42 U.S.C. § 2000e-5(g)(2)(B); *see also Venters,* 123 F.3d at 973 n.7. Because Darchak's evidence of discrimination is sufficient to reach a jury, she does not bear the burden of proving that the defendant's reasons for terminating her were pretextual—such a burden attaches only under the indirect method of proof, a standard not applicable here. *Venters,* 123 F.3d at 974.

### III

The dismissal of Darchak's retaliatory discharge and first amendment retaliation claims is AFFIRMED. The dismissal of her national origin discrimination claim is REVERSED and REMANDED for proceedings consistent with this opinion.